**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JESSICA AURIEMMA and CHARLETTE AURIEMMA, | Case No. 2:15-cv-00678-APG-NJK |
| Plaintiffs, | **ORDER (1) DENYING PLAINTIFFS' MOTION TO REMAND, (2) DENYING PLAINTIFFS' MOTION TO CONTINUE, AND (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant. | (ECF Nos. 27, 29, 30) |

Plaintiffs Jessica and Charlette Auriemma sue State Farm Mutual Automobile Insurance Company ("State Farm") for breach of contract based on its refusal to pay the policy limits of Jessica's Uninsured Motor Vehicle Coverage ("UMVC"). ECF No. 1-1 at 11. The plaintiffs also allege that State Farm breached the implied covenant of good faith and fair dealing, violated the Nevada Unfair Claims Practices Act, and was unjustly enriched. *Id.* at 12-14. The plaintiffs seek compensatory and punitive damages. *Id.* at 14.

The parties stipulated to dismiss all extra-contractual claims with prejudice. ECF No. 26. State Farm now moves for summary judgment on the remaining breach of contract claim, arguing that the plaintiffs breached the terms of Jessica's policy by not providing pertinent medical information and by failing to cooperate with State Farm before taking legal action against it. State Farm contends that it therefore should be relieved of its duties to pay the policy limits. Alternatively, State Farm seeks to dismiss the plaintiffs' claims for special damages beyond their initial medical expenses. State Farm argues that the plaintiffs cannot prove that their subsequent medical treatment was required as a result of the accident in question.

The plaintiffs did not file an opposition to State Farm's summary judgment motion. Over a month after the response deadline expired, the plaintiffs moved to remand the case to state

court, arguing that the amount in controversy fell below $75,000 after the parties stipulated to dismiss the extra-contractual claims. The plaintiffs also moved to extend the time to respond to State Farm's summary judgment motion until after their motion to remand is decided.

I deny the plaintiffs' motion to remand because jurisdiction was proper upon removal and subsequent changes in the amount in controversy do not deprive the court of diversity jurisdiction. I deny the plaintiffs' motion to extend time because the plaintiffs did not demonstrate that their failure to timely respond was the result of excusable neglect. Viewing the evidence in a light most favorable to the plaintiffs, no genuine dispute remains that Jessica and Charlette Auriemma failed to comply with the terms of Jessica's policy and failed to fulfill their contractual obligations before taking legal action against the insurer. I thus grant State Farm's motion for summary judgment against Jessica and Charlette Auriemma.

**I. BACKGROUND**

This case arises out of a car accident that allegedly injured both plaintiffs. Jessica and Charlette Auriemma were stopped at a red light when they were rear-ended by a driver who left the area before being identified. ECF No. 27-19 at 21-22. Jessica, the driver, was insured by a State Farm UMVC policy for accidents caused by an uninsured driver. ECF No. 27-3 at 5, 24.

Jessica's UMVC policy with State Farm covers her and any other person occupying her car. ECF No. 27-3 at 24. Charlette is covered because she was in Jessica's car at the time of the accident. The policy's "Insured's Duties" section requires the insured to cooperate with State Farm, and "when asked, assist [State Farm] in . . . securing and giving evidence." *Id.* at 36. A claimant also must "notify [State Farm] of the claim and give [the company] all the details about the death, injury, treatment, and other information that [it] may need as soon as reasonably possible after the injured insured is first examined or treated for the injury." *Id.* at 37. The provision also requires that the insured provide written authorization for State Farm to obtain medical bills, medical records, and "any other information [State Farm] deem[s] necessary to substantiate the claim." *Id.* Further, the policy's "Legal Action Against Us" provision states that

"[l]egal action may not be brought against . . . [State Farm] until there has been full compliance with all the provisions of this policy." *Id.* at 40.

The plaintiffs notified State Farm of the accident on the day it occurred, March 23, 2013. ECF No. 27-19 at 18, 39.  A few days later, State Farm sent Jessica a letter informing her of her Medical Payments Coverage and UMVC, and enclosed three forms for her to fill out and return: an authorization for release of medical information, a medical provider list, and a questionnaire about potential resulting injuries. ECF No. 27-5.  State Farm sent her another letter the next day discussing the UMVC and including the same attachments. EFC No. 27-6.  Although Jessica initially told State Farm that Charlette had not been injured in the accident, the company received treatment notes from Charlette's chiropractor on April 15, 2013, and added her to Jessica's claim. ECF. No. 27-4 at 7.

On September 16, 2013, State Farm followed up with both plaintiffs by resending information regarding their UMVC claims and again providing the injury questionnaire, medical provider list, and authorization to obtain medical records for the plaintiffs to complete and return. ECF No. 27-9.   In those letters, State Farm quoted relevant provisions of Jessica's policy which require a claimant to provide authorization for medical records and other information necessary for the insurer to substantiate a claim. *Id.*  State Farm's claim file shows that on October 4, 2013, it received returned mail it had sent to Jessica, and that it would re-send that mail after obtaining the correct address. ECF No. 27-4 at 5.  The report does not indicate on which date the returned mail was initially sent. *Id.*

State Farm received a letter of representation from the plaintiffs' counsel, dated November 1, 2013. ECF No. 27-10.  It responded with a letter of acknowledgment and this time sent the injury questionnaire, authorization for medical records, and medical provider list to the plaintiffs' counsel, along with requested policy information. ECF. No. 27-11.  In that correspondence, State Farm specifically requested a list of all medical providers that had treated the plaintiffs after the accident. *Id.*  Having received no response, it again requested the same documentation from the plaintiffs and their counsel on February 8, 2014. ECF No. 27-12.

On April 4, 2014, Charlette's counsel sent a letter to State Farm stating a demand in the amount of $55,245.00 and agreeing to accept the $25,000.00 policy limit. ECF No. 27-13.  State Farm replied with a letter that reminded the plaintiffs of their duty to cooperate with the company under the policy and asked for additional time to evaluate the claim once a police report of the accident was obtained. ECF No. 27-14.  State Farm sent another letter to the plaintiffs' counsel nearly two weeks later, reminding the plaintiffs of their duty to cooperate and requesting recorded statements from the plaintiffs because State Farm was not provided with a police report. ECF No. 27-15.

On December 8, 2014, Jessica's counsel sent a letter on her behalf stating that a demand of $53,265.00 is appropriate and warranted, and agreeing to accept the policy limit of $25,000 to prevent litigation. ECF No. 27-16.  The next day, State Farm again requested the same documents it previously requested. ECF No. 27-17.

At her deposition, Jessica testified that she filled out forms from State Farm regarding her claim. ECF No. 27-22 at 27.  She stated that she believes she filled out the authorization for release of information, the list of providers who treated her for injuries sustained from this accident, and an injury questionnaire, and she believes she returned them to State Farm. *Id.* at 27-28.  However, she did not recall filling out a form providing information about "all current and past medical providers and health carrier information." *Id.* at 28.  She did not state whether she filled out and returned those forms before or after she filed this lawsuit.

Charlette testified that she completed and gave the list of her past medical providers to her attorneys. ECF No. 27-19 at 33.  She also stated that she never received any forms to fill out from State Farm. *Id.* at 33, 58.  However, Charlette asserted that she has cooperated with State Farm, and remarked several times that if they asked her for any information, she either had or would have given it to them. *Id.* at 59-61.

The plaintiffs sued State Farm on February 16, 2015. ECF No. 1-1 at 8.  State Farm removed the case based on diversity jurisdiction. ECF No. 1.  After removal, the parties stipulated to dismiss all of the plaintiffs' extra-contractual claims with prejudice. ECF No. 26.  The

stipulation left only the breach of contract claim, limiting the damages to those provided in Jessica's UMVC policy. That policy has limits of $25,000 per person and $50,000 per accident. ECF No. 27-3 at 3.

State Farm now moves for summary judgment. The plaintiffs move to remand the case to state court and to extend time to respond to State Farm's summary judgment motion until after the motion to remand is decided.

**II. ANALYSIS**

**A. Plaintiffs' motion to remand**

**1. Reducing the amount in controversy below the required amount subsequent to proper removal does not destroy diversity jurisdiction.**

After the parties dismissed the plaintiffs' extra-contractual claims, the amount in controversy became the $50,000 per accident limit in Jessica's UMVC policy. The plaintiffs thus argue that this case should be remanded to state court because 28 U.S.C. § 1447(c) requires remand if the court lacks subject matter jurisdiction at any time before final judgment. The plaintiffs also argue that they are entitled to attorney's fees under that statute, which allows the court to require payment of costs resulting from an improper removal. *Id.* State Farm responds that the stipulation occurred after proper removal, and it therefore does not change the court's jurisdiction over this case.

"[D]iversity jurisdiction is determined at the time [an] action commences, and a federal court is not divested of jurisdiction . . . if the amount in controversy subsequently drops below the minimum jurisdictional level." *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293-95 (1938)). Specifically, if a plaintiff stipulates to reduce the amount in controversy below the amount required for jurisdiction, the court is not deprived of that jurisdiction. *St. Paul Mercury*, 303 U.S. at 292.

For this court to have subject matter jurisdiction based on diversity of citizenship, the case must be between citizens of different states, and the amount in controversy must exceed $75,000.

1  28 U.S.C. § 1332(a).  State Farm is an Illinois corporation with its headquarters in that state, and
2  plaintiffs are citizens of Nevada. ECF No. 1 at 2.  The parties therefore are diverse.  As discussed
3  below, State Farm satisfied its burden of proving that the amount in controversy was satisfied.
4  Because the stipulation lowering the amount in controversy occurred after proper removal, this
5  court retains subject matter jurisdiction over this case.  Therefore, I deny the plaintiffs' motion to
6  remand, and because I deny remand I also deny their request for attorney's fees.

**2. Removal was proper.**

8  Plaintiffs moved to remand asserting only that the amount in controversy is now lower
9  than $75,000.  But I have an independent obligation to ensure that this court has jurisdiction.
10  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526
11  U.S. 574, 583 (1999)).  Consequently, I will evaluate whether removal was proper at the outset.
12  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of*
13  *Am.*, 511 U.S. 375, 377 (1994).  Under 28 U.S.C. § 1332(a)(1), a federal district court has original
14  jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of
15  interest and costs, and is between citizens of different states."  A defendant may remove a suit
16  filed in state court that falls within the federal court's original jurisdiction. 28 U.S.C. § 1441(a).
17  The removing defendant bears the burden of establishing federal jurisdiction, including
18  any applicable amount in controversy requirement. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th
19  Cir. 1992).  This burden is generally satisfied where the plaintiff claims a total amount of
20  damages greater than the amount required to establish jurisdiction. *Id.*  But where a complaint
21  does not specify the amount of damages sought, the removing party must prove by a
22  preponderance of the evidence that the amount in controversy satisfies the jurisdictional
23  requirement. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  In
24  attempting to do so, a defendant may aggregate all of a plaintiff's claims to reach the amount
25  required for proper removal. *Hunter v. United Van Lines*, 746 F.2d 635, 650 (9th Cir. 1984).  But
26  separate and distinct claims by different plaintiffs may not be aggregated to satisfy the amount in

controversy requirement.[1] *Urbino v. Orkin Serv's of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013).

Here, the complaint did not specify the amount in controversy. ECF No. 1-1. To establish the jurisdictional amount of $75,000, State Farm pointed to the following amounts from the plaintiffs' complaint: $27,830 for Charlette's or $23,265 for Jessica's medical bills; a demand of $25,000 per plaintiff for the policy limits; and damages in excess of $10,000 for each claim for breach of the implied covenant of good faith and fair dealing, violations of the Nevada Unfair Claims Practices Act, and unjust enrichment. ECF Nos. 1 at 2; 1-1 at 9-14. Additionally, because the plaintiffs sought unspecified punitive damages based on bad faith, State Farm provided punitive damage awards from other cases. ECF No. 1 at 2-3.

Counsel for Charlette submitted a demand letter on her behalf to State Farm for the amount of $55,245 and noted that Charlette anticipated future medical expenses. ECF No. 27-13 at 2-3. Counsel for Jessica submitted a demand letter on her behalf for $53,265, again noting the anticipation of future medical expenses. ECF No. 27-16 at 2-3. Considering the amounts the plaintiffs demanded for settlement, the alleged amounts of their medical expenses, and the fact that after those amounts were demanded, the plaintiffs added three claims and a request for punitive damages,[2] State Farm established by a preponderance of the evidence that the amount in controversy as to each plaintiff exceeded $75,000 at the time of removal.

Because the parties were diverse and the amount in controversy at the time of removal more likely than not was above the jurisdictional amount, this case was properly removed under 28 U.S.C. § 1332(a). This court has jurisdiction.

---

[1] Aggregation of claims between parties is appropriate only where a defendant owes an obligation to the plaintiffs as a group instead of owing it to them separately. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir. 2001). This typically involves a single indivisible interest that cannot be adjudicated without affecting the rights of the others involved. *Id.* at 944-45. Here, although the claims surround a single policy with a limit of $50,000 per accident, each plaintiff seeks compensation for her own injuries and may be separately entitled to up to $25,000 each. The plaintiffs' claims are separate and distinct because, if found liable, State Farm owes a separate duty to each plaintiff based on her own injuries.

[2] "[P]unitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Nevada law allows for the recovery of punitive damages for bad faith insurance claims. Nev. Rev. Stat. §§ 42.005(1), (2)(b).

**B. Plaintiffs' motion to extend time**

Under the Local Rules, "[a] motion or stipulation to extend time must state the reasons for the extension requested." LR IA 6-1(a). If the request is made after a deadline for the movants' response, that request will not be granted unless the moving attorney or party "demonstrates that the failure to file the motion before the deadline expired was the result of excusable neglect." *Id.* "[E]xcusable neglect" is an equitable question for the court, considering "all relevant circumstances surrounding the party's omission." *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (quoting *Pioneer Inv. Svcs. Co. v, Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Courts use the following factors to determine whether a party's omission should be considered excusable neglect: the danger of prejudice to the other party; the length and impact of the delay on judicial proceedings; the reason for delay and whether it was reasonably within the party's control; and whether the party acted in good faith. *Id.*

State Farm filed its summary judgment motion on December 17, 2015. ECF No. 27. The plaintiffs had 21 days after the motion was served upon them to respond. LR 7-2(b). The plaintiffs did not file an opposition or a motion to continue within 21 days. Instead, on March 1, 2016 they filed their motion to continue and motion to remand. ECF Nos. 29, 30.

The plaintiffs argue that the court has no subject-matter jurisdiction and that a communication breakdown between the plaintiffs and their counsel prevented the timely filing of a response. They thus request that I grant additional time for them to file an opposition. State Farm has not identified any prejudice it would suffer and there is no evidence of bad faith. However, the plaintiffs' failure to file an opposition even at this late date is unexplained; allowing additional briefing would delay the proceedings further if the schedule were extended. The filing of a timely opposition was entirely within the plaintiffs' control. The plaintiffs could have moved for an extension before the deadline if there was an issue regarding attorney-client communication. Additionally, nothing prevented them from challenging subject-matter jurisdiction before the response deadline expired. They also could have provided an opposition along with the extension motion, which was filed long after the response deadline had already

expired. They did none of these things. Under these circumstances, I find no excusable neglect and I deny the plaintiffs' motion to extend.

**C. State Farm's motion for summary judgment[3]**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when admissible evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); (c)(1)(A). In considering a motion for summary judgment, "all reasonable inferences are drawn in favor of the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. The moving party has the initial burden of demonstrating the absence of a genuine issue of fact, and "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (quotation omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). But if the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To do so, a party need not resolve a material issue in its favor, but must bring forth specific facts which would allow a reasonable jury to return a verdict in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). At the summary judgment stage, the court's function is not to weigh the evidence or its credibility, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255.

---

[3] State Farm argues that under Local Rule 7-2(d), the plaintiffs' failure to respond to its motion serves as their consent to granting the motion. ECF No. 28. However, I may not grant a summary judgment motion merely because the opposing party has not responded. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993).

1  State Farm argues that it is entitled to judgment as a matter of law because the plaintiffs failed to comply with their contractual obligation to cooperate with State Farm's investigation before taking legal action against the insurer.  Specifically, State Farm asserts that before the suit was filed, it received no response to numerous requests for authorization to obtain medical records or medical history questionnaires.  According to State Farm, the plaintiffs' failure to cooperate relieves the company of its obligation to pay.  Alternatively, State Farm argues that Charlette's claims for special damages beyond payment for the chiropractor she saw directly after the accident should be dismissed because the plaintiffs cannot provide evidence that subsequent treatment was required as a result of the accident.

In the absence of a genuine dispute of fact, the interpretation of an insurance policy is a matter of law for the court to decide. *Nationwide Mut. Ins. Co. v. Moya*, 837 P.2d 426, 428 (Nev. 1992).  Nevada courts will construe insurance policies like any other contract, and will enforce them as written as long as there are no countervailing reasons or ambiguity. *Ellison v. Cal. State Auto Ass'n.*, 797 P.2d 975, 977 (Nev. 1990).  They will also "broadly interpret clauses providing coverage, to afford the insured the greatest possible coverage," and narrowly interpret clauses excluding coverage against the insurer. *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 392 (Nev. 2008).  Therefore, if an insurance policy is ambiguous, it must be resolved in favor of the insured. *Id.*

In Nevada, if an insured party fails to comply with an unambiguous, express condition precedent in her policy, coverage may be precluded as a matter of law regardless of whether the insurer was prejudiced. *Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.,* 714 P.2d 562, 562-64 (Nev. 1986).  An express condition need not be labeled as such, but the policy's plain language must show that a term is a condition of coverage that must be complied with to render the insurer liable under the policy. *Id.* at 562-63; *see also Holland v. State Farm Mut. Auto Ins. Co.*, 2:12-cv-01058-LDG-GWF, 2014 WL 1268712, at *5 (D. Nev. Mar. 27, 2014) (holding that the plaintiffs' refusal to cooperate with his insurer's investigations barred his lawsuit when a policy provision required the insured to cooperate before filing suit).

The policy states that no legal action may be taken against State Farm until there has been full compliance with all of the policy's provisions.  The policy's "Insured's Duties" section requires the insured to cooperate with State Farm, and when asked, assist the company by securing and providing evidence. ECF No. 27-3 at 36-37.  Furthermore, persons making a claim under a UMVC policy must provide written authorization for State Farm to obtain medical bills, medical records, and any other necessary information. *Id.*  The policy's plain language requires cooperation with the Insured's Duties section before the insured may sue State Farm. *Id.*  The policy thus unambiguously requires the insured to cooperate and provide medical record authorization prior to filing suit as a condition precedent for receiving policy benefits.

State Farm requested the plaintiffs' injury questionnaires, medical authorization forms, and medical provider lists multiple times for over a year and a half after the accident.  The company's claim file indicates that one of those requests did not reach Jessica.  Nonetheless, State Farm requested the forms multiple times from the plaintiffs and their counsel.  In doing so, State Farm reminded the plaintiffs and their counsel of the plaintiffs' duty to cooperate with the company by returning the completed forms.  There is no evidence that either the plaintiffs or their counsel responded to State Farm's communications by stating they had already provided that information.

Even accepting Jessica's vague testimony as true that she believed she filled out and returned some of the forms, there is no evidence of whether she filled out and returned those forms before or after she filed suit.  Additionally, she did not recall filling out and returning the list of current and past medical providers and health carrier information, and there is no evidence she did.  Charlette stated that if any requests were made of her to fill out paperwork, she complied, and there is evidence that State Farm received Charlette's injury questionnaire.  But there is no evidence that she completed and returned the provider list and the medical records authorization and did so before she filed suit.

State Farm has satisfied its initial burden to show that no genuine dispute exists as to the plaintiffs' failure to comply with their contractual duties because the plaintiffs did not cooperate

before they filed suit. The plaintiffs have not responded with any specific facts to show that a genuine dispute exists. Nor does the evidence before me demonstrate any such facts. Because the plaintiffs did not comply with an express condition precedent of the policy, State Farm is entitled to summary judgment on the remaining breach of contract claim.

**III. CONCLUSION**

**IT IS THEREFORE ORDERED** that State Farm's motion for summary judgment **(ECF No. 27) is GRANTED**. The Clerk of Court is directed to enter summary judgment in favor of State Farm Mutual Automobile Insurance Company and against plaintiffs Jessica Auriemma and Charlette Auriemma.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to remand **(ECF No. 29)** is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to continue **(ECF No. 30)** is **DENIED**.

DATED this 3rd day of August, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE